UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOANNE KLEIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV0204 HEA/AGF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Joanne Klein was not entitled to a waiver for an overpayment of $23,049 that she received in disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, during the period January 2001 to February 2003. The action was referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

**BACKGROUND**

**Agency Records**

Plaintiff, who was born on December 1, 1963, was awarded disability insurance

benefits due to major recurrent depression, with a disability onset date of September 12, 1987. (Tr. 15-19.) The record indicates that an Extended Period of Eligibility ("EPE") began in December 1997. Id. at 59. An EPE (also called 'reentitlement period") is a 36-month period during which a Social Security disability insurance beneficiary may perform substantial gainful activity ("SGA") without having her benefits terminated completely. 20 C.F.R. § 404.1592a. The EPE begins following the end of a nine-month (not necessarily consecutive) trial work period provided for in 42 U.S.C. § 422(c)(1)-(4), during which a beneficiary can engage in SGA and still receive benefits. During the EPE, the beneficiary is not entitled to benefits during the months in which she engages in SGA work, but she is entitled to benefits in months in which she does not work. § 404.1592a. After the EPE, the beneficiary's disability payments are terminated completely if she engages in SGA work at any time. Id.

On April 28, 1998, Plaintiff completed a Work Activity Report, informing the Social Security Administration ("SSA") that from September 30, 1997, to April 2, 1998, she had worked full time at $6.75 an hour. Plaintiff wrote on the form: "I am requesting reinstatement of my benefits under the extended period of eligibility requirements." Id. 81-83. An SSA representative noted on the form that Plaintiff was in her EPE, stopped working on April 2, 1998, and "We need to reinstate under the provisions of the EPE." Id. at 84.

By letter dated July 29, 1998, the SSA told Plaintiff that it found that her disability was continuing. Under the heading "Things to Remember," the letter stated, in relevant

part, as follows:

> You must tell us right away about any changes that may affect your
> benefits. If you don't, you may have to repay any benefits you are not due.
> Let us know if:
>
>> You went to work since your last report or you return to work
>> in the future (no matter how little you earn).

Id. 76. An attachment to the letter provided an explanation of the trial work period and the EPE, stating in part as follows:

> After we count your 9 trial work months, your right to monthly payments
> will still continue if you are disabled and your average earnings are not
> over: $500 a month . . . . If your earnings are over [this] amount[], we call
> your work "substantial" and we will stop your monthly payments. . . . If we
> must stop your monthly payments after 9 months of trial work, we may still
> be able to help you. For 36 months after your trial work period ends, we
> can pay you for any month that you are disabled and your work is not
> substantial. To get these benefits, you do not have to apply again. Just let
> us know how much you are earning.

Id. 79-80.

A Report of Contact dated August 10, 2001, stated that an SSA representative called Plaintiff regarding work for the year 2000, as information in Plaintiff's folder stated that she stopped working in April 1998, but the SSA had information that she had earned more that $19,000 in 2000. Plaintiff told the caller that she had returned to work in October 1999 and stopped working on December 8, 2000. She also said that she wanted to work again and that when she found a job, she would contact the SSA Field Office or Teleservice. Id. 85.

On January 22, 2003, the SSA sent Plaintiff a Notice of Proposed Decision,

3

informing Plaintiff that it had restarted her payments during her EPE, because she was no longer performing SGA, but now, based upon specified information that she had returned to work in January 2001, it appeared that the SSA would decide that Plaintiff was not entitled to benefits beginning January 2001 (36 months after her EPE had begun). The notice specifically referenced work at LIPA Enterprises, Inc. from January 2001 through February 2001, and work at St. Louis County government beginning September 2001, with no end date. The notice allowed Plaintiff time to provide additional information that she wanted the SSA to consider. It also indicated that if the SSA did not hear from her within the stated period, it would make its decision on the information it then had. Id. 57-58.

The agency records include a page labeled "Remarks," with three dated notations. The first notation, dated January 23, 2003, stated that Plaintiff called (or claimed she called) repeatedly to report that she started working and was concerned about a possible overpayment. A notation dated the next day stated that Plaintiff came into the office to report that she wanted her benefits to stop as she was working and making over the amount necessary to be considered engaging in SGA and no longer needed the benefits. Id. 25. Although the record does not contain the actual decision that Plaintiff had been overpaid $23,049.10 (since January 1, 2001), it is undisputed that at some point prior to March 14, 2003, Plaintiff was so informed -- the third entry on the "Remarks" document is dated March 14, 2003, and stated that Plaintiff came into the office inquiring about her overpayment and said that she was "not going to fight it" because the SSA had been good

4

to her and was there when she needed help.  Plaintiff further said that she did not have the full $23,049.10 to pay back at one time.  An installment agreement was explained to her and she said she would discuss with her husband how much she could afford to pay back each month and would come back to the office on March 17, 2003, to set up an installment agreement.  Id.

On March 8, 2004, Plaintiff requested a waiver of repayment of the $23,049.10 on the ground that she was not at fault and that she could not afford to repay the overpayment.  Plaintiff explained as follows:

> I was sent letters in the mail that my disability check would be continued without any prior penalties.  I strongly disagree with this decision and would like to settle this matter with you for it's causing great stress emotionally.  I tried calling when I found employment in St. Louis.  I wanted all future checks stopped.  The woman over the phone (SS Rep) said that I was still eligible.

Id. at 42-43.  A Report of Contact dated June 14, 2004, under the subject "Waiver Denial," stated as follows:

> AT FAULT: This claimant performed SGA, reported to SGA, completed her [trial work period], continued to perform SGA and negotiate her Title [II disability insurance] benefits which resulted in an overpayment of $23,049.10.  She was aware that her work would have an effect on her Title [II] Disability benefits but continued to cash her checks.  She is at fault in causing the overpayment.
>
> INCOME AND EXPENSES: Since the beneficiary is at fault in causing the overpayment, monthly income and expenses are not an issue.

Id. 35.  After this decision was confirmed at the next level of agency review, Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"), stating

that she disagreed with the determination that had been made because she felt that she had been given false information by an SSA representative. She added, "I do agree that some of it can be paid back due to an error on my part (not knowing the funds were Direct [Deposit])." Id. at 41. The requested hearing was held on October 5, 2005.

**Evidentiary Hearing (Tr. 67-75)**

At the beginning of the hearing, Plaintiff's counsel stated that he had no objections to any exhibits that had been filed and they were accepted into evidence. Upon questioning by her attorney, Plaintiff testified that she was 41 years old and lived with her husband in a house. She testified that she had been on Social Security disability for a while after she had a nervous breakdown for which she had been hospitalized and then moved to a group home. The person who ran the group home applied for the benefits on Plaintiff's behalf. Plaintiff then went to an alcoholic rehabilitation center and continued receiving benefits. This was in 1989 and 1990, at a time when she was living in New York.

Plaintiff testified that on October 5, 1995, she moved to St. Louis and started working part-time. She did not earn "a lot" because she knew that she could not make a lot of money while receiving benefits, but she wanted to better her life and gradually move up. In approximately September 1999 she had her first full-time job, cleaning for an internet company, and in 2001 she started to work full time at her current job in the office of the Recorder of Deeds (for St. Louis County). Plaintiff testified that since 1997

she had been seeing a psychiatrist, with a diagnosis that she detailed at the hearing.[1]

Plaintiff testified that when she started back to work in 1999, she called "the 800-number" to report her work activity and to stop her benefits. She testified that the SSA representative on the phone told her that she could keep getting benefits because she was "eligible for nine months." Plaintiff acknowledged that after nine months passed, she did not call back "or do anything like that." The first time that she knew there was a problem with overpayments was when she began receiving letters in the mail. She could not remember when this was. She explained as follows:

> [I]n the past there were problems with overpayments because of my part-time work. And what happened was, is that they had taken it out of my checks. So I assumed that the cost that was taken out of my checks in the past, that I didn't owe any money. And that's what I assumed, which was an unfortunate error on my part.

Plaintiff's attorney then asked her about her expenses. Plaintiff stated that her husband was about to have surgery and would not be working for at least one and a half months. Her monthly expenses (mortgage, utilities, car insurance, food, credit card payment, fuel, life insurance) were about $2,275. Her net monthly salary was about $1,200 a month, and her husband's net monthly salary was about $1,600.

Before the close of the hearing, Plaintiff stated that she was very grateful to the SSA for helping her when she needed it, and that she was very sorry for the

---

[1] At the hearing, Plaintiff expressed a desire to maintain confidentiality with regard to her diagnosis. Inasmuch as Plaintiff does not now argue that any mental impairment prevented her from understanding the notice provided to her, the Court has not detailed the diagnosis in this Opinion.

inconvenience she had caused through her "carelessness." She stated that she did not "mean for this to happen." She did not want to ever go on disability again and had worked hard to get to where she was and was very proud of herself for doing so. She again expressed her gratitude for the help she had received and apologized for the current inconvenience.

**ALJ's Decision of November 21, 2005 (Tr. 12-14)**

The ALJ stated that the evidence showed that Plaintiff completed her nine-month trial work period as of December 1997 and that her benefits had continued after expiration of her EPE, resulting in an overpayment of disability insurance benefits in the amount of $23,049.10. The ALJ stated further that the record showed that the SSA timely notified Plaintiff of reporting requirements and informed her that she had been overpaid. In reviewing the record, the ALJ referenced the July 29, 1998 letter from the SSA to Plaintiff, the Work Activity Report completed by Plaintiff on April 28, 1998, and the August 10, 2001 Report of Contact. The ALJ found the Plaintiff's allegation that she assumed that any overpayment was being withheld from her checks was not credible. The ALJ reasoned as follows:

> One would have to assume that the claimant never looked at bank statements (check received as direct deposit) for this argument to be found credible. Considering that, according to the claimant's testimony, her expenses are roughly equal to monthly household income, there is every reason to believe that she is well aware of the state of her bank account on a monthly basis. It is also notable that, according to her own testimony, she had been overpaid in the past. Based on this previous experience, she should have been aware of reporting procedures and reimbursement responsibilities.

8

The ALJ found that Plaintiff understood that her work would impact her disability benefits, but that she continued to accept overpaid benefits in spite of this knowledge. The ALJ found that therefore Plaintiff was at fault for causing the overpayment and that recovery could thus not be waived, noting that as she was at fault, her ability to repay was not material to the decision.

**Appeal to the Appeals Council and Arguments of the Parties**

On administrative appeal, Plaintiff argued that the ALJ improperly ignored her testimony that "she had been told by the Social Security Office Tele-service number that there was no overpayment and to ignore it." Plaintiff argued that in addition, the ALJ erred in failing to assess Plaintiff's mental functioning "during the period in question," as Plaintiff had testified that she had mental impairments and was treated by a psychiatrist during that period. Plaintiff also maintained that the information provided by the SSA regarding the trial work period and EPE were "significantly lacking." Id. 63-64.

Plaintiff does not now dispute the fact that she was overpaid in the amount specified by the SSA. Rather, Plaintiff asserts that the ALJ erred in his finding that she was at fault in causing the overpayment. In her opening brief, Plaintiff contends that the ALJ's decision was not supported by the administrative record that had been filed with the Court and that had been provided to counsel. That record did not include the following three documents referred to above: the letter to Plaintiff dated July 29, 1998; the Work Activity Report prepared by Plaintiff on April 28, 1998; and the Report of Contact dated August 10, 2001.

9

Thereafter, on August 20, 2008, the Commissioner supplemented the record before the Court with those records, explaining that they were inadvertently omitted from the previously certified administrative record. (Doc. #21.) In her reply brief, Plaintiff admits that nothing more than an innocent mistake occurred in omitting these records initially, but maintains that "the requirements of procedural due process and fair play at a minimum require this matter to be remanded for additional consideration."

The Commissioner argues that the ALJ's decision that Plaintiff was not without fault is supported by substantial evidence in the record as a whole, and that Plaintiff has not shown how the omission of documents from the record initially filed with the Court deprived her of a meaningful opportunity to present her case. The Commissioner argues that the documents were within Plaintiff's own knowledge (a letter sent to her, a report prepared by her, and a report of a conversation with her), and that as the ALJ's decision indicates that he had these documents before him in making his decision, remand would not serve any purpose.

## DISCUSSION

### Standard of Review

When reviewing a Social Security disability benefits decision, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ. Bates v. Chater, 54 F.3d 529, 532 (8th Cir.1995). Rather, a court must affirm the ALJ's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation

omitted). Reversal is not warranted "merely because substantial evidence would have supported an opposite decision." Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (citation omitted).

**<u>Statutory and Regulatory Provisions</u>**

Title 42 U.S.C. § 404(a) (1) (A) provides, in pertinent part, as follows: "With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person . . . to refund the amount in excess of the correct amount . . . ." However, 42 U.S.C. § 404(b) states, in pertinent part:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

Under the Commissioner's regulations, "[a]lthough the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. A determination of whether an overpaid individual is "without fault" requires consideration of "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." Id. An overpaid individual's fault depends on whether or not the overpayment resulted from:

11

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) . . . [A]cceptance of a payment which he either knew or could have been expected to know was incorrect.

Id.

Recovery or adjustment of an overpayment would defeat the purpose of the Social Security Act if it would deprive the person of income required for ordinary and necessary living expenses. Id. § 404.508. "Adjustment or recovery is considered to be against equity and good conscience if an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the incorrect payment itself." Id. at § 416.509.

The overpaid claimant has the burden of proving entitlement to a waiver of overpayment. Coulston v. Apfel, 224 F.3d 897, 900 (8th Cir. 2000) (per curiam); Chisenhall v. Astrue, No. 4:07-CV-587 (CEJ), 2008 WL 4423906, at *4 (E.D. Mo. Sept. 25, 2008).

**ALJ's Determination that Plaintiff was Not Without Fault**

The Court concludes that substantial evidence in the record supports the ALJ's finding that Plaintiff was overpaid $23,049.10 in disability insurance benefits because she did not report her SGA earnings after January 2001, and that the SSA had informed her (by the letter of July 29, 1998) that she had an obligation to report such earnings at risk of

12

having to repay benefits received that were not due her. The record also supports the ALJ's finding that Plaintiff understood that her work after January 2001 would impact her disability benefits. Plaintiff did not allege at the hearing, and does not argue now, that she did not understand this fact due to some mental impairment, nor did she present any such information within the time period set forth in the Notice of Proposed Decision. And she acknowledged at the hearing that after nine months passed from when an SSA representative told her she could receive benefits for that duration of time even if she was working, she did not report her further SGA earnings.

Even though the record before the Court does not indicate that Plaintiff had been overpaid in the past, the ALJ's comment that a past overpayment, to which Plaintiff had testified, would have made her aware of reporting requirements, was not the main support offered by the ALJ for his finding that Plaintiff knew that her work after January 2001 should have been reported. Lastly, the Court believes that the record supports the ALJ's finding that Plaintiff's testimony that she assumed that any overpayment was being withheld from her benefits checks was not credible.

In sum, substantial evidence in the record supports the ALJ's determination that Plaintiff was not without fault because she accepted payments she knew or could have been expected to know were incorrect. Wilkening v. Barnhart, 139 F. App'x 715, 720 (7th Cir. 2005) (holding that substantial evidence supported the ALJ's determination that disability claimant did not testify credibly that she did not know that working would render her ineligible for benefits, where the SSA had informed her that working would

13

render her ineligible for benefits, she completed one year of college after being diagnosed with bipolar disorder, and her condition did not require continuous use of medication); Brenner v. Astrue, 4:07 CV 1632 DDN, 2008 WL 3925166, at *7 (E.D. Mo. Aug. 20, 2008) (holding that the SSA's Notice of Proposed Decision alerted the plaintiff of SGA reporting requirements and the failure thereafter to report such work supported the ALJ's decision that the plaintiff was at fault for resulting overpayment).

There is, accordingly, no need to consider whether or not recovery would defeat the purposes of the Social Security Act or would be against equity and good conscience. See, e.g., Wilkening, 139 F. App'x at 720.

**Plaintiff's Due Process Argument**

Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citations omitted). The Court agrees with the Commissioner that Plaintiff has not shown how she was deprived of this opportunity, either at the administrative level or in the action before the Court, by the late supplementation of the record. The ALJ's reference to the documents in question shows that they were before the ALJ at the time of the ALJ's decision. And Plaintiff's argument that she (or her counsel) was not provided with the documents until they were filed with the Court on August 20, 2008, rings hollow as the documents were not within the exclusive control of the Commissioner. The actual information in the documents is not disputed and Plaintiff has failed to explain why remanding the case for additional consideration would serve any purpose.

## **CONCLUSION**

The ALJ's decision correctly applied the law and was supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

The parties are advised that they have ten days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 23rd day of July, 2009.